No. 22,323.

C. M. FINLEY, *Appellee*, v. CHRISTIAN DUBACH, Jr., *Appellant*.

### SYLLABUS BY THE COURT.

COTENANCY—*Equitable Partition—Rights of Purchaser from One Cotenant.* Where the owner of an undivided half interest in a tract of land of uniform value executes a warranty deed purporting to convey to a stranger by metes and bounds the whole of a specific portion (being less than half) of the tract, the deed is not a nullity. Although it cannot vest full title in the grantee, it confers on him certain equitable rights, one of which is, in the event of partition, to have the tract covered by the deed set apart to him, if this can be done without prejudice to the rights of the nongranting cotenant. And this right of the grantee is not impaired by the grantor's quitclaiming to the nongranting cotenant his interest in the portion of the tract not covered by the warranty deed, inasmuch as the cotenant thereby acquires no

higher right than was held by the maker of the quitclaim. And where in that situation the nongranting cotenant conveys away the whole of the tract not covered by the warranty deed, he is precluded from successfully attacking the title of the grantee under the warranty deed (the deed first herein referred to) to the tract which it covers.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed December 6, 1919. Reversed.

*A. L. Perry,* of Troy, *Lawrence Bothwell,* and *A. Bowers,* both of St. Joseph, Mo., for the appellant.

*C. E. Butts,* of Troy, *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Henry Reynolds died owning a tract of land containing 35 acres. He left a will by which his widow was to have a life interest in all his property, with power of disposal, what remained at her death to go to William Early and Harry Early, sons of his niece. The widow elected to take under the law instead of under the will. On March 14, 1912, she executed a warranty deed purporting to convey the whole of a distinct portion of the land, containing 10 acres, to W. W. Wolf, who eight months later made a similar deed to Christian Dubach, jr. On January 13, 1913, the widow died intestate, without having made any other conveyance to any of the land referred to, her sole heirs being her brothers, John and James Brady, and her sister, Katherine Brady. In 1917 these heirs quitclaimed to the Early brothers their interest in the 25 acres other than the 10 referred to, and William Early made over his interest therein to Harry Early. Harry Early then deeded it to W. S. Davis. On March 28, 1918, the Early brothers executed a quitclaim for the 10-acre tract to C. M. Finley. Finley then brought an action against Dubach, who was in possession, to recover a half interest in that tract, and for rents and profits. The plaintiff recovered, and the defendant appeals.

It will be assumed, without deciding, that on the death of Henry Reynolds his wife became the owner of an undivided half interest in the 35-acre tract, and William and Harry Early became the owners of the other. This assumption

can do no injustice to the Earlys, inasmuch as the widow was obviously entitled to at least one-half of whatever her husband owned at the time of his death. The situation may then be thus restated: Mrs. Reynolds, owning an undivided half interest in a 35-acre tract, made to Wolf, who later conveyed to Dubach, a warranty deed to the whole of a specific tract of 10 acres carved out of the larger tract. The owner of the other half interest, after the death of Mrs. Reynolds, obtained a quitclaim to the remaining 25 acres from her heirs and conveyed it to Davis, whose title thereto is not assailed, he not being a party to the litigation. The Earlys then made a quitclaim of the 10-acre tract to Finley, and the question involved is whether he thereby acquired a half interest in it.

Although the owner of an undivided interest in land cannot convey a complete title to a separate portion of the tract, yet a deed by which he purports to do so is not a nullity, but will be good as between the parties by estoppel, and will be given effect, except so far as it may prejudice the rights of the grantor's cotenants, by whom alone (or by claimants under them) it can be attacked. (38 Cyc. 115; 7 R. C. L. 881-884; Freeman on Cotenancy and Partition, 2d ed., § 199 et seq.) Moreover, it has been held, and the holding seems just, that in such a situation a duty is imposed upon the cotenants who do not join in the deed to do no act which would impair the equities arising therefrom. (7 R. C. L. 882, citing Pellow v. Arctic Iron Co., 164 Mich. 87, annotated in 47 L. R. A., n. s., 573.)

If immediately after the execution of the deed from Mrs. Reynolds to Wolf an action had been brought to partition the 35 acres, the 10-acre tract would have been included in the portion set apart to Mrs. Reynolds and her grantee, quite as a matter of course, unless some special reason were shown to the contrary, operating to the prejudice of the Earlys. (Note, 47 L. R. A., n. s., 578-579; Freeman on Cotenancy and Partition, 2d ed., § 205.) Evidence was introduced to the effect that all parts of the land were of equal value, and this is not controverted. There could therefore have been no reason in such a proceeding for not protecting completely the rights of Wolf, as against Mrs. Reynolds, and awarding him the full title to the 10-acre tract, inasmuch as this could have been done without any prejudice whatever to the interests of the

Earlys. The obvious fairness of that adjustment would be so strong as to give the claim of Wolf to such treatment the force of an actual property right. As against Mrs. Reynolds, this would be especially obvious, and having assumed in virtue of her ownership of a half interest in the 35 acres to convey to him the entire title to a portion of it, she may be regarded as holding the interest which she still retained in the land subject to her obligation to make her deed good.

To determine what obligations, if any, Finley, or those through whom he claims, may have been under to respect the equities of Wolf, which have now passed to Dubach, it will be necessary to consider the source of his title. Clearly, he stands on no higher ground than the Earlys, as he claims under a mere quitclaim from them, and the question may be discussed as though they, and not he, were the litigants. As devisees of Henry Reynolds they acquired a right to an undivided half of the 35 acres and could not against their will be deprived of any part of that, except by what would amount to partition, under which they would be entitled to 17½ acres. With respect to the 25-acre tract alone (that is, the part of the 35-acre tract not covered by the warranty deed of Mrs. Reynolds to Wolf), the Earlys were likewise entitled to an undivided half interest—the equivalent of the full ownership of 12½ acres, by virtue of the provisions of the will of Henry Reynolds. This much of the 25-acre tract they have received and disposed of by sale to Davis. And they have also accepted and disposed of the other half interest in the 25-acre tract, their title thereto being derived solely from Mrs. Reynolds, through the quitclaim from her heirs. As to this half interest—the equivalent of full title to 12½ acres—they stand in the shoes of Mrs. Reynolds; they could acquire only what she had to give. When she assumed to convey and warrant to Wolf the full title to a distinct tract of 10 acres, she in equity reduced her original interest—the equivalent of 17½ acres—to the equivalent of 7½ acres; she thereby limited to 7½ acres the interest in the original tract to which she was equitably entitled. After guaranteeing that Wolf should have the full title to the 10-acre tract, she could not in good conscience assert for her own benefit a greater right in what remained than a claim to the equivalent of 7½ acres. That is what she would have been entitled to in parti-

tion, and no more. If the Earlys then, having the unquestioned title to half of the 25-acre tract—the equivalent of 12½ acres—were permitted to retain their original half interest in the 10-acre tract—the equivalent of 5 acres—and then to acquire from Mrs. Reynolds (through quitclaim from her heirs) the other half interest in the 25-acre tract—the equivalent of 12½ acres—they would in effect be receiving from Mrs. Reynolds 5 acres more than she had any equitable right to claim or convey. Mrs. Reynolds, in warranting to Wolf the full title to 10 acres, had drawn to that extent upon her original fund of 17½ acres and reduced by that much the acreage which she could rightfully hold or dispose of for her own benefit. The title to the other 5-acre interest must be regarded as held by her for the protection of Wolf, to whom she had conveyed the 10-acre tract—to serve, when partition should be had, as compensation to the Early brothers for giving up their half interest in that tract. The Earlys having elected to claim full title to the 25-acre tract, which they could do only by relying upon the rights of Mrs. Reynolds therein, in effect accepted this arrangement, and are precluded from asserting against Wolf or his grantee any higher right to the 10-acre tract than she had possessed. No inequity can result to the Earlys (or to the plaintiff, who holds under their quitclaim to the 10-acre tract) from this view. They have had the benefit of their original half interest, and in addition thereto have had the benefit, by quitclaim from Mrs. Reynolds' heirs, of all the rights left to her after she had warranted to Wolf his title to 10 acres.

The matter may be summarized and simplified by considering the result of a partition of the 35-acre tract at various stages of the transaction. Immediately after the deed to Wolf he would have received, as already said, the 10-acre tract; Mrs. Reynold's 7½ out of the other 25; and the Early brothers the remaining 17½ acres. The conveyance by Wolf to Dubach would of course have made no change in the distribution, except that the latter would have received the 10-acre tract. After the death of Mrs. Reynolds, the distribution would have been the same, except that her heirs would have received the 7½ acres which by a previous partition would have gone to her. After the heirs had quitclaimed to the Earlys, the share that would have been coming to the Earlys in a prior partition

Reynolds v. Insurance Co.

(17½ acres) would have been increased merely by the share that would then have been coming to the heirs (7½ acres), and would therefore have amounted to 25 acres. This was the measure of their interest in the 35-acre tract at that time, and they could not increase it by conveying away the 25-acre tract.

Evidence was introduced having some tendency to strengthen the defendant's position on the ground of acquiescence, but as no special findings were made, it cannot be known what view was taken by the trial court of the facts in this regard. The considerations already stated, however, are sufficient to control the decision.

The judgment is reversed, and the cause is remanded with directions to render judgment for the defendant.

JOHNSTON, C. J., dissents.