S. MINCHEN, Appellant,

v.

Maurice HIRSCH et al., Appellees.

No. 6044.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 20, 1956.

Rehearing Denied Oct. 17, 1956.

Hirsch & Westheimer, Andrews, Kurth, Campbell & Bradley, Houston, for appellant.

Vinson, Elkins, Weems & Searls, Houston, Coleman Gay and James R. Meyers, Austin, Hall W. Griggs, West Columbia, Paul A. McDermott and Nat J. Harben, Ft. Worth, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Brazoria County, decreeing the respective mineral interests of the appellants and the various appellees in and under a tract of land in Brazoria County. The case was submitted in the trial court without a jury and the parties entered into various stipulations of fact and agreed that the cause should be decided and judgment entered according to the construction given by the court to three disputed instruments.

The instruments to be construed were as follows:

(1) Deed of Trust from Dave F. Bryan to Henry James, Trustee for Southern Mortgage Company, dated June 17, 1924;

(2) a supplemental instrument involving said deed of trust, executed by J. L. Hiers, President of Southern Mortgage Company, dated May 16, 1928;

(3) a royalty deed from Dave F. Bryan et al. to S. Minchen, dated July 10, 1928.

The trial court held in its judgment that the deed of trust and supplemental instrument (Nos. 1 and 2 above) granted to the trustee for Southern Mortgage Company, in trust, an undivided ⅛th mineral interest in and under said land, and further held that the mineral interest or royalty deed (No. 3 above) conveyed to Minchen an undivided ¹⁄₆₄th mineral royalty in, on and under said tract of land and rendered judgment accordingly. The parties had entered into an agreement as to what interest each party would have under each alternative construction of these instruments, and the court rendered judgment in accordance with such agreement under the court's construction of the three written instruments.

S. Minchen has appealed from said judgment, only as to the court's construction of the royalty deed from Bryan to Minchen, and says that the instrument should be construed to convey to him an undivided ¹⁄₁₆th fee royalty interest in and under the tract in question.

Appellants Maurice Hirsch et al. appealed only from that portion of the judgment which construed the deed of trust and the subsequent instrument relating thereto as passing title only to the ⅛th undivided interest and say that such instrument should be construed as conveying "one-half of what the grantor Bryan owned, to-wit, ³⁷⁄₁₉₂nds."

Appellees W. Stewart Boyle et al., and appellees Addie Damon et al., contend that the judgment in its entirety should be affirmed.

The parties stipulated as to the following instruments which affect title to the land in question: This stipulation began with deeds from the immediate grantors to the common source of title, Dave F. Bryan, to whom was conveyed a total undivided ³⁷⁄₉₆ths mineral interest in the tract in question. After acquiring this undivided ³⁷⁄₉₆ths

mineral interest, Dave F. Bryan executed a deed of trust to Henry James, Trustee for Southern Mortgage Company, on June 17, 1924, which deed of trust covers a mineral interest, the extent of which is in dispute in this lawsuit. On February 9, 1926, Dave F. Bryan granted a total of an undivided 18/96ths mineral interest to Oscar James by two separate deeds, leaving to Bryan an undivided 19/96ths mineral interest. On May 16, 1928, a supplemental instrument having to do with the above mentioned deed of trust was executed by J. L. Hiers, President for the Southern Mortgage Company, and this instrument was filed for record on July 16, 1928. The construction of this instrument with the above mentioned deed of trust is in dispute in this lawsuit. On July 10, 1928, Dave F. Bryan (and his sister, Ludie J. Bryan, who need not be considered further, since there is no showing she had any interest in the property), made a conveyance of royalty to the plaintiff, S. Minchen, the extent of interest conveyed being in dispute in this lawsuit and the royalty interest held to be conveyed by the trial court (an undivided 1/64th royalty interest) being assigned as error by Minchen. He contends that this instrument conveyed an undivided 1/16th royalty interest to him.

We consider first the contention of appellants Maurice Hirsch, et al., that the trial court erred in construing the deed of trust and subsequent instrument by the mortgagee as passing title only to an undivided 1/8th mineral interest in the land involved. Under this point such appellants point out that Dave F. Bryan, the common source of title to all parties in the suit, had record title to an undivided 37/96ths interest in the minerals under the land at the time of and prior to the date of execution of the deed of trust to Henry James, Trustee for Southern Mortgage Company. The mortgagee under said deed of trust subsequently executed an instrument which they say attempted to define the intention under the deed of trust. The deed of trust itself conveyed to the trustee in trust "one-half (½) of all the right, title and interest of D. F. Bryan and Ludie J. Bryan, whether owned jointly or severally in and to all the oil, gas, sulphur and any other minerals * * *." Such deed of trust also contained the following statement as to what was granted thereby, "together with all right, title, estate or interest that grantor now owns or may hereafter own in said land in and to any and all mines or minerals, including oil and gas, or any and all rents, royalties or other revenues arising from any such minerals and any mineral lease now existing, or that may hereafter exist under said lands or any part thereof, under which Grantor would receive any rent or royalty, together with all rights and privileges as lessor for the purpose of collecting said rents and royalties." The second instrument, one executed by Southern Mortgage Company, was in the nature of a correction instrument and it recited that it was the understanding and intention of the mortgagors in the deed of trust to convey by said mortgage a lien on one-half (½) of their holdings in the minerals; the correction instrument also stated "the mortgage on the surface to be the whole of their holdings; in other words, that the mortgage created on the surface should cover three-eighths (⅜ths) acres, undivided in the twelve and one-half (12½) acres, and on the minerals an undivided one-half (½) of their holdings of one-fourth (¼th) in the twelve and one-half (12½) acres, making one and five thousand, six hundred and twenty-five ten thousandths (1.5625) acres of all the minerals."

■ Appellants Maurice Hirsch et al. contend that the correction instrument by its terms covered one-half of whatever the grantor Bryan owned. From the reading of the whole instrument, particularly that portion which is set out above in this opinion in quotation, we have concluded that the trial court was correct in its construction of the effects of the deed of trust and the correction instrument executed by Southern Mortgage Company. Hirsch, et al. in their argument must assume that the correction instrument was a valid one, but

make the argument that such correction instrument itself covered one-half of whatever Bryan owned. We think the complete language showed in detail the intention of the grantors and the entire sentence of intention showed an undivided ⅛th mineral interest was to be covered.

The real bone of contention in this lawsuit is the construction of the royalty deed from Bryan to Minchen. The original of this instrument was in evidence and has been brought up in the record on appeal in this case. The interest conveyed thereby is referred to in the deed in three places, first in the granting clause:

"Have Granted, Bargained, Sold and Conveyed, and by these presents do hereby grant, bargain, sell and convey, unto the said S. Minchen, of Harris County, Texas, a one-sixteenth (¹⁄₁₆th) fee mineral royalty of our one-fourth (¼th) interest in, on, or under the following described lands and premises, situated in Brazoria County,"

second in the habendum clause,

"To Have and To Hold the above described one-sixteenth (¹⁄₁₆th) fee perpetual mineral royalty in, on, or under our undivided one-fourth (¼th) interest,"

and last in a clause which states the express intention of the grantor,

" * * * it is our intention to convey unto the said S. Minchen, his heirs and assigns, free and clear of all claims, liens and encumbrances, a perpetual one-sixteenth (¹⁄₁₆th) fee mineral royalty/*out* of our interest therein."

It is noted that in the final clause stating the intention of the grantor, the grantor has written in the word "out" in his own handwriting before the words "of our interest therein" and has written to one side "ok DFB".

The trial court held that the joint effect of these three clauses was to convey to Minchen a ¹⁄₆₄th fee mineral royalty in the land in suit. All of the parties, those contending that the trial court's construction of the instrument was correct and Minchen, who contends that the instrument conveyed a ¹⁄₁₆th royalty interest to him, have filed able and extensive briefs on this question.

The granting clause of the mineral deed refers to a "one-sixteenth (¹⁄₁₆th) fee mineral royalty of our one-fourth (¼th) interest." Minchen concedes that under the law of Texas this statement, if followed by no statement showing contrary intent, did grant an undivided ¹⁄₆₄th royalty interest. The habendum clause, however, refers to a "one sixteenth (¹⁄₁₆th) fee perpetual mineral royalty in, on or under our undivided one-fourth (¼th) interest." This clause, as we view it, is equivocal. It can be harmonized with the granting clause or it can be harmonized with the latter clause respecting the intent of the grantor. The clause stating the intent of the grantor recites that "it is our intention to convey unto the said S. Minchen, his heirs and assigns, free and clear of all claims, liens and encumbrances, a perpetual one-sixteenth (¹⁄₁₆th) royalty out of our interest therein." The word "out" is written with pen and ink into this sentence by the grantor. We think the clear meaning of this clause is that it was the intention of the grantor to convey to Minchen an undivided one-sixteenth (¹⁄₁₆th) royalty interest in the land. This clause cannot be reconciled with the granting clause. It appears that the ambiguous wording of the habendum clause was noticed by the grantor and that he added the entire paragraph in the deed which stated his intention to be to grant to the grantee a perpetual ¹⁄₁₆th fee mineral royalty out of his interest. The phrase "out of" clearly indicates only the source from which the one-sixteenth (¹⁄₁₆th) interest was to be taken. In construing a deed or other instrument of conveyance some meaning should be given to every word in the written instrument, if it can reasonably be done

and if it is not inconsistent with the general intent of the whole instrument, so that the deed may operate, as by law it may, according to the intention of the parties. Edwards v. Edwards, Tex.Civ.App., 52 S.W.2d 657. That construction which is most consistent with the intention of the grantor, as gathered from the terms of the conveyance, is accepted as the true one. Technical rules of construction are not favored and must not be applied so as to defeat the intention. Barkley v. Gibbs, Tex.Com.App., 242 S.W. 462. In Williams v. J. & C. Royalty Company, Tex. Civ.App., 254 S.W.2d 178, error refused, the court construed a deed to a tract of land which reserved to the grantor one-half of the royalty retained in an existing lease upon the land, " 'being one-sixteenth of all oil and gas, and one-twentieth of other minerals in and to said premises hereby conveyed,' " and provided that grantor would have the right to drill for and take away the minerals. The grantee contended that the deed reserved only a royalty interest which terminated in the release of the existing lease. The court held that the deed reserved a permanent mineral interest consisting of one-sixteenth ($\frac{1}{16}$th) of the oil and gas and one-twentieth ($\frac{1}{20}$) of the other minerals. The court's reasoning was that it could not be said that only a royalty interest was retained and at the same time give effect to the clause providing that grantor was to have the right to drill for and take away the minerals, and held that the reservation of such right indicated that the reserved interest was to survive the existing lease inasmuch as the exclusive right to drill was vested in the owner of such lease. The court also held in language which we believe applies with equal force to the construction of the mineral deed before us as follows: "It is true that in the first clause of the reservation, the parties used the term 'royalty' but they went further, and in the second and third clauses set forth fully and completely what they meant thereby even to the extent of stating certain of the appurtenances thereto. When contracting parties set forth their own definitions of the terms they employ, the courts are not at liberty to disregard such definitions and substitute other word meanings therefor." In the case of Alexander v. Byrd, Tex.Civ.App., 114 S. W.2d 915, error refused, and Spangler v. Spangler, Tex.Civ.App., 42 S.W.2d 826, the courts restated the rule that it is the duty of a construing court to look to all parts of the deed to ascertain the intention of the grantor and that such intention of the grantor should be given effect.

■ We think, also, that the well settled rule of law that where handwritten and printed or typewritten matters in an instrument are inconsistent, the handwritten part will prevail, is in support of appellant Minchen's contention that the handwritten word "out" in the clause of intention serves to show the intent of the grantor to be to convey an undivided one-sixteenth ($\frac{1}{16}$th) mineral interest. Without the addition of the word "out" written in by the grantor the statement of intent would have read that he intended to grant a one-sixteenth ($\frac{1}{16}$th) of his interest. With the addition of that word it clearly stated his intent to be to grant a one-sixteenth ($\frac{1}{16}$th) out of his interest.

■ Appellees Boyle, et al. and Damon, et al., argue in support of the trial court's construction of the conveyance to Minchen that Minchen's grantor, when he represented that he had an undivided one-fourth ($\frac{1}{4}$th) mineral interest in the $12\frac{1}{2}$ acre tract, would have a royalty interest equal to one-eighth ($\frac{1}{8}$th) of one-fourth ($\frac{1}{4}$th), or one-thirty-second ($\frac{1}{32}$nd) of the whole tract, and therefore to construe the royalty deed as conveying a one-sixteenth ($\frac{1}{16}$th) royalty would be to construe it as conveying more than the grantor owned. We disagree with this argument. The owner of a mineral interest in land can make it subject to any royalty interest that he wishes to convey, provided the royalty interest does

not exceed his mineral interest. There is no rule of law which would prevent the owner of a one-fourth mineral interest from conveying a full one-fourth royalty if he wishes to do so, keeping in himself leasing rights, rights to bonuses and delayed rentals, and other rights attributable to mineral interests. Although Minchen's grantor did not own the full one-fourth ($\frac{1}{4}$th) interest he represented that he had, he did own at least a seven-ninety-sixth ($\frac{7}{96}$th) interest. Thus when he conveyed a one-sixteenth, ($\frac{1}{16}$th) or six-ninety-sixths ($\frac{6}{96}$ths) interest to Minchen he conveyed less than the seven-ninety-sixths ($\frac{7}{96}$ths) interest that he owned.

Appellant Minchen complains in his other point of error that the trial court erred in submitting in evidence over his objection a supplemental list of instruments executed by Minchen's grantor. These instruments consisted of some fifteen written instruments affecting the title to the $12\frac{1}{2}$ acre tract in suit. These instruments are as follows:

1. Agreement J. L. Gallaher to give oil and gas lease on one-fourth interest, with 2 year term and $\frac{1}{8}$th royalty, to Oscar James, dated March 26, 1920, recorded March 29, 1920, Book 158, page 415.

2. Oil and gas lease on one-half interest with five year primary term and $\frac{1}{8}$th royalty from Mentor Gallaher and Mrs. Pinkie Cooper, et vir, to Oscar James, dated March 29, 1920, Recorded March 30, 1920, Book 158, page 417.

3. Oil and gas lease on one-fourth interest, with five year primary term and $\frac{1}{8}$th royalty, from L. F. Gallaher to Oscar James, undated, Recorded March 31, 1920, Book 158, page 422.

4. Royalty and mineral deed of one-half royalty from one-fourth interest under lease above, and thereafter one-half of said mineral, from Mentor Gallaher to J. C. Faickney and John G. Phillips, dated April 9, 1920, Recorded April 14, 1920, Book 158, page 537.

5. Partition agreement as to above stated royalty and mineral interest, one-fourth to J. C. Faickney, one-fourth to R. F. Faickney, one-sixth to W. R. Nash, one-sixth to J. G. Phillips, and one-sixth to John H. Underwood, dated August 7, 1920, Recorded August 17, 1920, Book 161, page 487.

6. Deed from Mentor Gallaher to Dave F. Bryan covering all grantor's interest, stated as being one-eighth interest with one-eighth interest in the royalty, being $\frac{1}{64}$th royalty interest, subject to lease outstanding, dated October 21, 1921, Recorded October 24, 1921, Book 171, page 75.

7. Deed from Mrs. Pinkie Cooper et vir to Dave F. Bryan, covering all grantor's interest, stated as being one-fourth interest with one-fourth interest in the royalty, being $\frac{1}{32}$nd royalty interest, subject to lease outstanding, dated October 21, 1921, Recorded October 24, 1921, Book 171, page 76.

8. Deed from John H. Underwood to D. F. Bryan and Oscar James of the interest acquired by grantor in the above stated partition agreement, dated October 26, 1921, Recorded October 29, 1921, Book 171, page 109.

9. Deed of trust from D. F. Bryan, Oscar James and Ludie J. Bryan to Union National Bank of Houston, covering several described tracts, including all of grantors' mineral interest in the $12\frac{1}{2}$ acre tract herein involved, to secure a $34,600 note of D. F. Bryan and a $15,000 note of D. F. Bryan and Oscar James jointly, dated June 23, 1923, Recorded June 28, 1923, Book 177, page 530 and Book 35, page 547 DT.

10. Deed of trust from D. F. Bryan and Ludie J. Bryan to Henry James, Trustee for Southern Mortgage Company, covering several described tracts, including one-half of grantors' mineral interest in the $12\frac{1}{2}$

acre tract herein involved, subject to said deed of trust of June 23, 1923, to secure bonds by D. F. Bryan in the amount of $40,000 dated June 17, 1924, Recorded June 21, 1924, Book 36, page 192 DT.

11. Deed of all grantor's interest from Oscar James to D. J. Harrison for $500 consideration, dated February 9, 1926, Recorded February 15, 1926 at 9 a.m., Book 193, page 468.

12. Deed from Dave F. Bryan to Oscar James of one-half of the interest conveyed to grantor by Mrs. Pinkie Cooper as above stated, intention being stated to convey one-half of a one-quarter interest, for $10 and other valuable considerations, dated February 9, 1926, Recorded February 15, 1926, at 9 a.m., Book 192, page 469.

13. Deed from Dave F. Bryan to Oscar James of one-half of the interest conveyed to grantor by Mentor Gallaher as above stated, intention being stated to convey one-half of a one-eighth interest, for $10 and other valuable considerations, dated February 9, 1926, Recorded February 15, 1926, at 9 a.m., Book 193, page 470.

14. Release by Union National Bank of Houston to D. F. Bryan, Oscar James and Ludie J. Bryan of above described deed of trust securing $34,600 note of D. F. Bryan and $15,000 note of D. F. Bryan and Oscar James, both of which are recited as paid, dated January 25, 1927, Recorded June 17, 1927, Book 40, page 1 DT.

15. Extension of deed of trust from D. F. Bryan and Ludie J. Bryan to Henry James, Trustee for Southern Mortgage Company as above described, dated June 17, 1927, Recorded September 12, 1927, Book 40, page 163 DT.

When the instruments were offered in evidence and objection made thereto, the trial court did not make a direct ruling, but stated "I will carry them along with the case." No further ruling on the objection is to be found in the transcript. The appellees say that these instruments were properly introduced in evidence, under the rule that wide latitude is permitted in the introduction of evidence to determine the intention of parties to a deed. They say that these instruments show the attending circumstances at the time the Bryan to Minchen conveyance and the Southern Mortgage Company correction instrument were filed for record; that the instruments show that Bryan conveyed to Oscar James a three-sixteenths mineral interest in the land in question between the date of the deed of trust for the benefit of Southern Mortgage Company and the conveyance to Minchen. Such appellees contend that from these other instruments it appears that D. F. Bryan thought he had mortgaged not only one-half of the quarter which he considered he acquired for himself and his sister, but also the three-sixteenths interest which he put in the name of Oscar James. Such deductions appear to us to be highly speculative as to Bryan's intent at the time he executed the conveyance to Minchen. However, it is the general rule that when a case is tried before the court without a jury and matters are improperly received in evidence, the reviewing court will presume that the trial court considered only the material and proper evidence before it. Even though the trial court may have considered the instruments complained of, we believe that it is immaterial to a determination of this appeal, because of our holding above that the plain intent of the grantor Bryan is to be found in the instrument itself. If some evidence of another intent of the grantor might be found in the instruments objected to, it would not be of sufficient probative force to overcome the language in the instrument itself, plainly expressing the intent of the grantor.

The judgment of the trial court construing the deed of trust and the correction instrument executed in connection therewith is affirmed. That portion of the trial court's judgment which is based upon the holding that the Bryan to Minchen conveyance conveyed only a 1/64th mineral royalty

interest is reversed and judgment is rendered in accordance with our holding that such instrument conveyed a 1/16th royalty interest in and under the tract of land in question.

Affirmed in part and reversed and rendered in part.